UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| RS&H, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) No. 3:24-cv-00436-WGY-LLL |
| | ) |
| THE TRAVELERS INDEMNITY COMPANY, | ) |
| THE CHARTER OAK FIRE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

YOUNG, D.J.[1]                                     May 7, 2026

**FINDINGS OF FACT, RULINGS OF LAW,
AND ORDER UNDER RULE 54(B)**

**I. INTRODUCTION**

In this action, two construction workers were severely
injured when a water pipe burst at a construction site.  The
workers sued, among others, the plaintiff here, RS&H, Inc.
("RS&H"), an engineering firm purportedly responsible for, among
other things, site safety.  RS&H sued its insurer, the Charter
Oak Fire Insurance Company ("Charter Oak"), and the general
contractor's insurer, the Travelers Indemnity Company
("Travelers"), under Commercial General Liability Policies for
defense and indemnification.  For the reasons stated below, upon

---

[1] Of the District of Massachusetts, sitting by designation.

careful consideration of the parties' submissions, and the arguments made at a case stated[2] hearing, the Court enters

---

[2] "Case stated hearings provide an efficacious procedural alternative to cross motions for summary judgment." Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 198 (D. Mass. 2020). "In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 10-11 (1st Cir. 2012) (internal quotation marks omitted). Although the case-stated procedural device entitles the Court to "engage in a certain amount of factfinding," id., "case stated hearings usually involve but a modicum [thereof] -- nothing more than the drawing of reasonable inferences," Moitoso, 451 F. Supp. at 199. Unlike at summary judgment, "the Court is relieved of drawing all inferences against each moving party, instead drawing such inferences as are reasonable to resolve the case." Chiocca v. Town of Rockland, No. CV 19-10482-WGY, 2022 WL 4817094, at *16 (D. Mass. Oct. 3, 2022) (quoting Bunch v. W.R. Grace & Co., 532 F. Supp. 2d 283, 287 (D. Mass. 2008)). See Massachusetts Lobstermen's Ass'n., Inc. v. Nat'l Marine Fisheries Serv., No. CV 24-10332-WGY, 2024 WL 2194260, at *3 n.5 (D. Mass. Apr. 16, 2024).

The use of case-stated proceedings, though common in this Court's resident district, see, e.g., Doe v. Univ. Mass., 145 F.4th 158, 168 (1st Cir. 2025); Triumph Foods, LLC v. Campbell, 715 F. Supp. 3d 143, 152 (D. Mass. 2024), aff'd, 156 F.4th 29 (1st Cir. 2025), is apparently a novel procedure in this district, though there is a similar procedure. See Fla. Int'l. Univ. Bd. Trs. v. Fla. Nat'l. Univ., Inc., 830 F.3d 1242, 1252 (11th Cir. 2016) (permitting district courts to treat cross-motions for summary judgment as bench trial when parties stipulate to record and no need for additional evidence); Pound L. LLC v. Vidal, No. 6:23-CV-61-ACC-RMN, 2023 WL 11263253, at *2 (M.D. Fla. Apr. 12, 2023). Nevertheless, the case stated procedure resonates well with the Eleventh Circuit's disdain for cross-motions for summary judgment in non-jury trials, viewing such motion practice as a waste of judicial resources:

> [C]ross-motions for summary judgment in non-jury cases are a very inefficient method by which to decide a case. When parties move for summary judgment, they tell the court that they are ready for a determination on the merits and that no material fact issues remain

findings of facts, rulings of law, and enters an order in favor of the defendants as to the duty to defend.  Separate judgment expressly does **not** enter pursuant to Fed. R. Civ. P. 54(b).  As this matter is bifurcated, the Court does not reach the issue whether either defendant has a duty to indemnify RS&H.  Inasmuch as the duty to defend was undertaken on a case stated basis, and that issue resolved by order, the pending motions for summary judgment as to the duty to defend, Nos. 28, 29, and 30, are each DENIED as MOOT.

## II.  PROCEDURAL HISTORY

This diversity action for declaratory relief and damages was filed by RS&H, a professional engineering firm, against Travelers, and Charter Oak, see Am. Compl., ECF No. 6.  Prior to reassignment of the dispositive motions to this Court, the

---

for a factfinder to decide.  If both parties move for summary judgment after conducting extensive discovery, then the parties effectively agree that no fact issues exist.  But when the court grants summary judgment in these situations, the loser will invariably take an appeal and argue that there was a fact dispute or credibility issue that prevented the court from deciding the case, despite arguing the opposite below. The winner will argue that no fact issues remain. If a fact issue does remain, the case must be reversed and remanded to hold a bench trial, which should have occurred in the first place. And, of course, the loser of the bench trial will then appeal.

FCOA LLC v. Foremost Title & Escrow Servs., LLC, 57 F.4th 939, 959-60 (11th. Cir. 2023).

[3]

action was bifurcated as to duties to defend and to indemnify. See Order, ECF No. 23.

The parties timely filed cross-motions for summary judgment as to the Defendants' duty to defend, which are fully briefed. Pl's. Mot. for Summ. J. ("RS&H Mot."), ECF No. 28; Travelers' Mem. Law Opp. Pl. RS&H's Mot. Summ. J. ("Travelers Opp'n"), ECF No. 38; Charter Oak's Mem. Law Opp. Pl. RS&H's Mot. Summ. J. ("Charter Oak Opp'n"), ECF No. 39; Reply Travelers Mem. Law Opp'n. Pl. RS&H's Mot. Summ. J. ("RS&H Reply Travelers"), ECF No. 48; Def. Charter Oak's Mot. Summ. J. ("Charter Oak Mot."), ECF No. 29; Resp. Charter Oak's Mot. Summ. J. ("RS&H Opp'n Charter Oak's Mot."), ECF No. 37; Charter Oak's Reply Resp. Mot. Summ. J. ("Charter Oak Reply"), ECF No. 49; Def. Travelers' Mot. Summ. J. ("Travelers Mot."), ECF No. 30; RS&H's Resp. Travelers' Mot. Summ. J. ("RS&H Opp'n Travelers Mot."), ECF No. 40; Traveler's Reply to RS&H Mot. Summ. J. ("Travelers Reply"), ECF No. 50.

There is no genuine dispute as to the underlying insurance policies, and the allegations made in the underlying personal injury lawsuit. Rather, the parties dispute the application of law to those facts as to the issue of whether either defendant owes RS&H a duty to defend, and whether certain facts can be considered. On June 10, 2025, the Court invited the parties to present the matter as a case-stated in this action. Electronic

[4]

Order, ECF No. 53.  On June 20, 2025, the parties initially declined the Court's invitation and decided to proceed on the motions for summary judgment.  Notice, ECF No. 54.  At the hearing on the motions for summary judgment, the parties reconsidered, and requested the matter be decided on a case-stated basis.  Minute Entry, ECF No. 55.

On July 8, 2025, the Court held a case-stated hearing and took the matter under advisement.  Minute Entry, ECF No. 57. The Court now provides its findings of fact and rulings of law as to the duty to defend issue.

## III. FACTS

### A.   The Sterling/Hays County Road Project and Applicable Insurance Policies

In 2016, non-party Sterling Construction Company, Inc. ("Sterling") entered into a contract with non-party Hays County, Texas ("the Sterling/Hays County Contract") for a road-widening project ("the Project").  Am. Compl. ¶ 9, Ex. C.  RS&H subsequently entered into a contract with Hays County to provide, among other things, on-site inspection services ("the RS&H/Hays County Contract").  Am. Compl. ¶ 10, Ex. D.  Under the Sterling/Hays County Contract, Sterling agreed to name RS&H as an additional insured, Special Conditions, § VI, Policy Endorsements & Special Conditions (1).  Sterling's insurance policy was Traveler's Policy No. VTC2K-CO-2E97127A-IND-17 with

[5]

Policy Limits of $2,000,000 ("the Traveler's Policy").  Am. Compl. ¶¶ 8, 10-13, Ex. B.  RS&H had its own Commercial General Liability Policy with Charter Oak, Policy No. P220630-4711N755, with Policy Limits of $1,000,000 (hereinafter "the Charter Oak Policy").  Am. Compl. ¶ 7, Ex. A.

B.    **The Sterling/Hays County Road Project Accident and the Underlying Lawsuit**

For purpose of deciding the duty-to-defend issue, the Court accepts as true the allegations made in the Second Amended Petition ("SAP"), ECF No. 38-1, the operative pleading in an action styled <u>Dionicio Reyes & Carlos Hernandez</u> v. <u>Sterling Construction Company, Inc., et al.</u>, Cause No. 20-0400, 453rd Judicial District, District Court, Hays County, Texas ("the Underlying Lawsuit").  The SAP is the operative pleading, but the parties cite to both the First Amended Petition and the SAP as the Underlying Lawsuit.  With the exception of a certificate of merit,[3] they are virtually the same.

---

Under Texas law, a Certificate of Merit must be included

in any action  . . . for damages arising out of the provision of professional services by a licensed or registered professional, . . . . [which] shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim.

[6]

In the Underlying Lawsuit, Dionicio Reyes and Carlos Hernandez, were allegedly catastrophically injured on the Project when a pipe unexpectedly exploded due to high water pressure in a trench.  The Underlying Lawsuit alleged that, among other things, RS&H's inspector, Johnathan Garcia, was neither licensed to perform nor performing professional engineering services when he failed to detect the unsafe condition that led to the accident.  Demand was made by RS&H under both the Charter Oak Policy and the Travelers Policy. Both Charter Oak and Travelers declined to defend the Underlying

---

TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a), (b).  The Certificate of Merit expands upon the factual allegations, and "requires only that a similarly licensed professional, knowledgeable of the defendant's area of practice, provide a sworn written statement certifying that the defendant's professional actions or omissions were negligent or otherwise erroneous and the factual basis for such claims."  Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp., 520 S.W.3d 887, 897 (Tex. 2017).
    It is statutorily required only where there is a claim for professional negligence.  The factual allegations of the certificate of merit reference the Sterling/RSH Contract which is for professional services.  The factual allegations of the Certificate of Merit claim that, while it is unknown whether the RS&H employee was a licensed professional, the Certificate of Merit is nonetheless properly submitted in support of a claim for negligence in the performance of professional services.  See Carter & Burgess, Inc. v. Sardari, 355 S.W.3d 804, 811 (Tex. App. 2011) ("[T]he use of an unlicensed employee in the course of providing professional services does not eliminate the certificate of merit requirement applicable when the plaintiff seeks to impose liability on a professional architecture or engineering firm.").  The underlying plaintiffs here allege professional services negligence as matter of Texas law. Accordingly, the Professional Services Provision applies.

[7]

Lawsuit, and the instant action ensued for declaratory relief and damages.

## IV.    RULINGS OF LAW

The Court rules that neither Charter Oak, nor Travelers have a duty to defend RS&H in the Underlying Lawsuit.

### A.    Duty Defend Against the Underlying Lawsuit

#### 1. Charter Oak Has No Duty to Defend Under The Professional Services Exclusion of the Charter Oak Policy

"Under Florida law, an insurer has a duty to defend its insured against any claim and alleged facts within the terms of the policy and to indemnify the insured up to the limits of the policy." Kropilak v. 21st Century Ins. Co., 806 F.3d 1062, 1067 (11th Cir. 2015). "It is well-settled that the interpretation of an insurance policy is a question of law to be decided by the Court." Odin Enters., Inc. v. Westchester Surplus Lines Ins. Co., No. 8:24-CV-1594-TPB-SPF, 2025 WL 562602, at *2 (M.D. Fla. Feb. 20, 2025) (Barber, J.). "Under Florida law, 'insurance contracts must be construed in accordance with the plain language of the policy.'" Mallah v. Essentia Ins. Co., No. 8:24-CV-2904-VMC-SPF, 2025 WL 579255, at *2 (M.D. Fla. Feb. 21, 2025) (quoting Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003)). As with all contracts, "[i]nsurance contracts are to be read in a common-sense and natural manner." Odin Enterprises, Inc. v. Westchester Surplus

[8]

Lines Ins. Co., No. 8:24-CV-1594-TPB-SPF, 2025 WL 562602, at *2 (M.D. Fla. Feb. 20, 2025) (Barber, J.) (citing Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc., 10 F.4th 1255, 1264 (11th Cir. 2021)). "[I]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous. An ambiguous provision is construed in favor of the insured and strictly against the drafter." Swire Pac. Holdings, Inc., 845 So. 2d at 165. "Florida courts narrowly construe policy provisions that purport to exclude coverage," but as here, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Auto-Owners Ins. Co. v. E.N.D. Servs., Inc., 506 F. App'x 920, 923-924 (11th Cir. 2013).

"Under Florida law, the determination of an insurer's duty to defend falls under the so-called 'eight corners rule,' the name of which refers to the four corners of **the insurance policy** and the four corners of **the underlying complaint**." Addison Ins. Co. v. 4000 Island Blvd. Condo. Assn., Inc., 721 Fed. Appx. 847, 854 (11th Cir. 2017) (emphasis added) (citing Mid-Continent Cas. Co. v. Royal Crane, LLC, 169 So.3d 174, 182 (Fla. Dist. Ct. App. 2015)). Under the eight corners rule, "an insurer's duty to defend its insured against a legal action 'arises when the

[9]

complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" Id. (quoting Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So.2d 435, 442-43 (Fla. 2005)). The Court looks not to the complaint in the instant action, but rather to the "operative" underlying complaint in the Underlying Lawsuit, here the SAP. See Addison Ins. Co. v. 4000 Island Blvd. Condo. Assn., Inc., 721 Fed. Appx. 847, 855 (11th Cir. 2017) (construing eight corners rule under operative underlying second amended complaint).[4]

"When adjudicating whether the insurer has a duty to defend, the Court will only consider the factual allegations 'from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses.'" Mt. Hawley Ins. Co. v. H&M Builders, LLC, et al, 711 F. Supp. 3d 1373, 1379 (S.D. Fla. 2024) (quoting State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004)). "In other words, the duty to defend 'is determined solely by the allegations against the insured, **not by the actual facts, nor the insured's version of the facts.**'" Travelers Indem. Co. v.

---

[4] The same is true under Texas law: "the duty to defend is determined by consulting the latest amended pleading." Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 528 (5th Cir. 2004); see Liberty Mut. Fire Ins. Co. v. Copart of Connecticut, Inc., 75 F.4th 522, 529 n. 3 (5th Cir. 2023).

Figg Bridge Eng'rs, Inc., 389 F. Supp. 3d 1060, 1069 (S.D. Fla. 2019) (emphasis added). If the underlying complaint is "within the policy's coverage, the insurer must defend as a matter of law, 'regardless of the merits of the lawsuit.'" Addison Ins. Co., 721 Fed. Appx. at 854 (citing State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004) (applying Florida law)).

Under the above standards, the Court finds and rules that Charter Oak has no duty to defend RS&H in the Underlying Lawsuit.

To begin, RS&H is an insured under the Charter Oak Policy. The Charter Oak Policy provides:

SECTION I - COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY

DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Charter Oak Policy, Coverage Form, § I(1)(a), ECF No. 6-1 28.

The Charter Oak Policy, however, excludes from coverage bodily injuries "**arising out of** the rendering of or failure to

[11]

render **any professional services."**  Charter Oak Policy,

Exclusion -- Engineers, Architect or Surveyors Professional

Liability, ECF No. 6-1 96.  Under the Charter Oak Policy,

> "Professional services" means any service **requiring specialized skill or training, including:**
>
> .  .  .  .
>
> b.    **Supervision, inspection**, quality control architectural, engineering or surveying activity or service, **job site safety**, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor…

Id. (emphasis added).

Applying the eight corners rule, based upon the above

language, the Court must analyze the Underlying Lawsuit's

allegations, which include:

> On or about April 25, 2018, **Plaintiffs DIONICIO REYES and CARLOS HERNANDEZ, while in the course and scope of their employment with DC Civil Construction were working in a trench, in the process of replacing an old water line at a project site located at FM 1626/ FM 967, Buda, Hays County, Texas. Plaintiff CARLOS HERNANDEZ and DIONCIO REYES were working when suddenly and unexpectedly the pipes exploded, due to high water pressure causing catastrophic injuries to both Plaintiffs.**  Defendants STERLING CONSTRUCTION COMPANY, INC., TEXAS STERLING CONSTRUCTION CO., and CITY OF BUDA. CITY OF BUDA WATER DEPARTMENT, TEXAS DEPARTMENT OF TRANSPORTATION, HAYS COUNTY and **RS&H, INC., had actual and contractual control of the work being performed on said project site and the safety methods, safety inspections, pressurized water lines and actual control of said site and the injury-producing event.**  Defendant CITY of BUDA WATER DEPARTMENT is a public utility performing the proprietary function of utility construction.

[12]

> DEFENDANT HAYS COUNTY is a public utility performing the function of utility construction and was in control of the premises containing an premises defect. DEFENDANT TEXAS DEPARTMENT OF TRANSPORTATION is owner of the project to widen the farm-to-market road. DEFENDANTS TEXAS STERLING CONSTRUCTION AND STERLING CONSTRUCTION were the general contractors of the project with safety and management responsibilities. **DEFENDANTS RS&H** contracted with DEFENDANT HAYS COUNTY **to manage the safety of the project and to serve as inspectors of the project as it related to safety protocols to include the work to be performed in and around the water system. DEFENDANT RS&H served as the safety inspectors pertaining to coordinating, controlling and actually and contractually the pressurized water system to be worked on workers such as Plaintiffs with responsibilities to ensure safety protocols were being followed in accordance with OSHA and industry standards.  This role does not require specialized knowledge and skill by a registered and licensed engineer.**

SAP ¶ 6.1 (emphasis added).

The SAP also alleges that RS&H failed to enforce safety regulations under OSHA and industry standards:

> Defendants STERLING CONSTRUCTION, TEXAS STERLING CONSTRUCTION, INC., TEXAS DEPARTMENT OF TRANSPORTATION, CITY OF BUDA , **RS&H** and HAYS COUNTY their agents, servants, and employees **created a dangerous condition with knowledge of the dangerous condition of the release of stored energy namely water pressure, which proximately caused the injuries to Plaintiffs.**  Said Defendants failed to maintain a safe place to work, **failed to enforce safety regulations, failed to inspect the safety protocols as required by contract and the OSHA and industry standards and failed to warn of the dangerous conditions** existing on said site over which it had actual and contractual control.

Id. ¶ 9.1 (emphasis added).

[13]

The SAP also alleges that RS&H, among others, "negligently failed to **ensure, maintain, and control a safe work place and to properly supervise, identify and correct hazards** known to them that could expose workers to injury due to the premature release of water pressure, to include noncompliance with . . . their contractual obligations **to be subject to the US Department of Labor Regulations and other federal OSHA regulations.**" Id. ¶ 9.2 (emphasis added). Additionally, the SAP alleges that "RS&H, **as safety inspectors to include specifically the water pressure maintained in the pipe** and the exposure to the workers, namely Plaintiffs, had a duty to use reasonable care to keep the premises and work area under their contractual and actual control in a safe condition." Id. ¶ 9.3 (emphasis added).

The Court rules that the Underlying Lawsuit's SAP alleges that RS&H was hired to provide professional services relating to inspection and safety, even if presuming -- without ruling -- RS&H did not act as a professional engineer. Indeed, the failure to comply with OSHA, the failure to inspect and provide job safety no doubt arise out of professional services provided by RS&H, even if not required to be provided by a professional engineer. See Auto-Owners Ins. Co., 506 Fed. Appx. at 927; Sentinel Ins. Co., Ltd. v. Durham Eng'r, Inc., 431 F. Supp. 3d 1023, 1032 (S.D. Ind. 2020) (Safety inspection duties professional services); see also Admiral Ins. Co. v. Ford, 607

[14]

F.3d 420, 426 (5th Cir. 2010) ("Ford was tasked with ensuring that the well did not blow out.  Taking, or not taking, certain measures to ensure that the drill pipe did not fail under the particular drilling conditions requires Ford's specialized knowledge and training, and thus is an excluded professional service.").  The Professional Services Exclusion therefore applies.  Charter Oak is entitled to judgment on the Professional Services Exclusion, and it owes no duty to defend RS&H the Underlying Lawsuit.

### 2. Travelers Has No Duty to Defend RS&H in the Underlying Lawsuit

Travelers similarly owes RS&H no duty to defend against the Underlying Lawsuit because, while RS&H is arguably an additional insured, RS&H falls within the professional services exclusion of coverage.  "In order to decide whether there is a duty to defend under the policy, the [C]ourt must first determine whether the party alleging coverage qualifies as an additional insured under the policy," and if so, "must then determine whether, under Texas's eight-corners rule, the facts alleged in the underlying state court proceedings are sufficient to trigger the duty to defend under the policy."  ACE Am. Ins. Co. v.

[15]

<u>Freeport Welding & Fabricating, Inc.</u>, 699 F.3d 832, 839 (5th Cir. 2012).[5]  RS&H bears the burden on each issue.  <u>Id.</u>

> ### a. RS&H is an Additional Insured Except as to its Own Negligence.

RS&H is an additional insured under the Blanket Additional Insured Endorsement ("Blanket AI Endorsement") of the Travelers' Policy, **except** as to its own acts and omissions.  The Blanket AI Endorsement to the Travelers Policy provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> 1. The following is added to SECTION II - WHO IS AN INSURED:
>
> Any person or organization that:
>
> a. You agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part; and
>
> b. Has not been added as an additional insured for the same project by attachment of an endorsement under this Coverage Part which includes such person or organization in the endorsement's schedule;
>
> is an insured, but:
>
> . . . Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and

---

[5] The parties argue Texas law as to Travelers' obligations, and the Court discerns no reason to vary from the reliance on Texas law for this analysis.  Travelers' RS&H Opp'n 2 ("Both parties argue Texas law in support of their respective positions, and Travelers cites Florida cases as well, contending no conflict exists between Texas and Florida law.").

[16]

. . . .

(a)   The person or organization is an additional insured **only if, and to the extent that, the injury or damage is caused by** acts or omissions of **you or your subcontractor in the performance of "your work"** to which the "written contract requiring insurance" applies; **and**

(b)   The person or organization **does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.**

Blanket AI Endorsement, ECF No. 6-2 34 (emphasis added).

As an initial matter, there is no dispute as to whether RS&H was contractually required to be an additional insured. See Traveler's Mem. 5 n. 3, 11; RS&H Opp'n 3-4.  The dispute centers on whether the latter part of the provision covers only vicarious liability.

Travelers argues that under the Blanket AI Endorsement, the Travelers Policy only provides coverage **to RS&H** for injuries caused **by Sterling** and **its entities.**  Traveler's Mot. 18; Traveler's Opp'n 15.  Traveler's argues that RS&H is not covered as additional insured **unless** it is being sued **vicariously** for **Sterling's** acts.  Travelers Opp'n 18; Travelers Mot. 17 - 19 (citing Stallion Heavy Haulers LP v. Lincoln Gen. Ins. Co., No. SA-09-CA-317, 2011 WL 13238392, at *2 (W.D. Tex. Sept. 12, 2011); Community Asphalt Corp. v. Travelers Indem. Co. of Am., No. 16-21758-CIV, 2017 WL 4712199, at *5 (S.D. Fla. Apr. 26, 2017)).

[17]

RS&H concedes that it is not an additional insured for purposes solely of its **"independent acts or omissions"**, but argues that the term means work that is unrelated to the Sterling Entities' work, RS&H Opp'n 6, but that "there is no requirement in the [Blanket] AI Endorsement . . . that RS&H be 'specifically' charged with vicarious liability in order to achieve [Additional Insured] status." RS&H Mem. 17. "When an insurance policy does not define a term, [the Court] give[s] the language its plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning," otherwise it is interpreted under its "plain meaning." Privilege Underwriters Reciprocal Exch. v. Mankoff, No. 24-0132, 2026 WL 406028, at *2 (Tex. Feb. 13, 2026) (quotation and citation omitted). If, however, the Court "conclude[s] that the language is ambiguous, [it] must resolve the uncertainty by adopting the construction that most favors the insured." Id., at *2.

The Court is persuaded that "independent" -- an undefined term -- is a non-technical term, but ambiguous. Accordingly, for purposes of this motion the Court determines that in the situation here, the underlying complaint alleges multiple parties being responsible for the same activities, some of those activities are not "independent," resulting in potential coverage under the policy, and therefore a duty to defend. See

[18]

Orchard v. Phoenix Ins. Co., 146 F. Supp. 3d 879, 890 (E.D. Mich. 2015), order amended on denial of reconsideration sub nom.; Orchard, Hiltz & McCliment, Inc. v. Phoenix Ins. Co., No. 2:14-CV-11902, 2016 WL 8259546 (E.D. Mich. Jan. 14, 2016), aff'd, 676 F. App'x 515 (6th Cir. 2017).

RS&H argues that it is this type of liability alleged in the underlying complaint. RS&H cites to ¶ 6.1 of the SAP. Applying the eight corners rule, having reviewed the policy, the Court must analyze the Underlying Lawsuit's allegations, which include:

On or about April 25, 2018, **Plaintiffs DIONICIO REYES and CARLOS HERNANDEZ, while in the course and scope of their employment with DC Civil Construction were working in a trench, in the process of replacing an old water line at a project site located at FM 1626/ FM 967, Buda, Hays County, Texas. Plaintiff CARLOS HERNANDEZ and DIONCIO REYES were working when suddenly and unexpectedly the pipes exploded, due to high water pressure causing catastrophic injuries to both Plaintiffs.** Defendants STERLING CONSTRUCTION COMPANY, INC., TEXAS STERLING CONSTRUCTION CO., and CITY OF BUDA. CITY OF BUDA WATER DEPARTMENT, TEXAS DEPARTMENT OF TRANSPORTATION, HAYS COUNTY and **RS&H, INC., had actual and contractual control of the work being performed on said project site and the safety methods, safety inspections, pressurized water lines and actual control of said site and the injury-producing event.** Defendant CITY of BUDA WATER DEPARTMENT is a public utility performing the proprietary function of utility construction. DEFENDANT HAYS COUNTY is a public utility performing the function of utility construction and was in control of the premises containing a premises defect. DEFENDANT TEXAS DEPARTMENT OF TRANSPORTATION is owner of the project to widen the farm-to-market road. DEFENDANTS TEXAS STERLING CONSTRUCTION AND STERLING CONSTRUCTION were the general contractors of the

[19]

project with safety and management responsibilities. **DEFENDANTS RS&H contracted with DEFENDANT HAYS COUNTY to manage the safety of the project and to serve as inspectors of the project as it related to safety protocols to include the work to be performed in and around the water system. DEFENDANT RS&H served as the safety inspectors pertaining to coordinating, controlling and actually and contractually the pressurized water system to be worked on workers such as Plaintiffs with responsibilities to ensure safety protocols were being followed in accordance with OSHA and industry standards.  This role does not require specialized knowledge and skill by a registered and licensed engineer.**

Id.    Further, and more directly the SAC provides:

9.1 Defendants STERLING CONSTRUCTION, TEXAS STERLING CONSTRUCTION, INC., TEXAS DEPARTMENT OF TRANSPORTATION, CITY OF BUDA , **RS&H** and HAYS COUNTY their agents, servants, and employees **created a dangerous condition with knowledge of the dangerous condition of the release of stored energy namely water pressure, which proximately caused the injuries to Plaintiffs.  Said Defendants failed to maintain a safe place to work, failed to enforce safety regulations, failed to inspect the safety protocols as required by contract and the OSHA and industry standards and failed to warn of the dangerous conditions existing on said site over which it had actual and contractual control.**

9.2 **DEFENDANTS owed a duty** to Plaintiffs to ensure and maintain a safe work place as **Defendants maintained control of the water pressure, inspection of the protocols when working with pressurized pipes, control of the safety protocols as they relate to working with pressurized pipes and prevention of the dangerous release of water pressure, contemporaneous with the injuries suffered by Plaintiffs.** DEFENDANTS negligently failed to ensure, maintain, and control a safe work place **and to properly supervise,** identify and correct hazards known to them that could expose workers to injury due to the premature release of water pressure, to include noncompliance with their own safety rules and their contractual obligations to be subject to the US Department of Labor Regulations

[20]

and other federal OSHA regulations pursuant to a federally assisted contract.  Said DEFENDANTS had complete control of the water system in question and negligently failed to ensure and maintain a safe work place and to properly supervise and inspect the individuals, equipment, protocols, materials, and construction procedures as required by OSHA and various industry standards pertaining to working in trenches with pressurized pipes used by Defendants as a direct and proximate result, Plaintiffs suffered damages as specified herein, for which Plaintiffs now sue.

9.3 DEFENDANTS RS&H, as safety inspectors to include specifically the water pressure maintained in the pipe and the exposure to the workers, namely Plaintiffs, had a duty to use reasonable care to keep the premises and work area under their contractual and actual control in a safe condition.

9.4 The Defendants exercised and/or retained actual control over the work place, individuals, and construction site.

9.5 Plaintiffs alleges that each and every one of the aforesaid careless and negligent acts and/or omissions on the part of these Defendants constitutes negligence, which was and is the proximate cause and producing cause of the injuries and damages sustained by Plaintiffs.

See SAP §§ 9.1 - 9.5.  The above allegations support a claim for

**direct** negligence, and not a claim for **vicarious** liability.

There is no express allegation that RS&H is "vicariously" liable

for **Sterling's** acts or omissions.

At the case-stated hearing, RS&H relied heavily on ATOFINA

Petrochemicals, Inc. v. Continental Cas. Co., 185 S.W.3d. 440

(Tex. 2005).  In that case, the Texas Supreme Court addressed a

similar, but distinguishable provision:

[21]

1. THAT PERSON, OR ORGANIZATION, IS ONLY AN ADDITIONAL INSURED **FOR ITS LIABILITY ARISING OUT OF PREMISES** "YOU" OWN, RENT, LEASE OR OCCUPY **OR FOR "YOUR WORK" FOR OR ON BEHALF OF THE ADDITIONAL INSURED**; AND

2. THE INSURANCE AFFORDED THE ADDITIONAL INSURED UNDER THIS ENDORSEMENT DOES NOT APPLY TO ... ANY LIABILITY ARISING OUT OF ANY ACT, **ERROR OR OMISSION OF THE ADDITIONAL INSURED, OR ANY OF ITS EMPLOYEES....**

ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co., 185 S.W.3d 440, 444 (Tex. 2005).

The facts of that case are straight-forward. A&B Builders, Inc. ("A&B") was hired for construction on premises owned by ATOFINA Petrochemicals, Inc. ("Fina"). ATOFINA, 185 S.W.3d at 441. An A&B employee was injured unloading steel on the site. Id. The A&B employee sued Fina and others for negligence. Id. Fina requested defense as an additional insured under A&B's Commercial General Liability policy with Continental Casualty Co., Inc. ("Continental"). Id. The Texas Supreme Court adopted Fina's interpretation that the above-exclusion applied only to its sole negligence, and rejected Continental's interpretation that the exclusion barred all coverage "when any negligence on the part of the premises owner is pleaded, unless the owner's responsibility is based solely on vicarious liability for the acts of the contractor" because that "would render coverage under the endorsement largely illusory." Id. at 444.

[22]

Travelers distinguishes ATOFINA, arguing that the provision at issue in the instant matter relates more narrowly to "'injury or damage . . . **caused by acts or omissions of** [the Sterling Entities]' in the performance of the Sterling Entities' 'work' to which the 'written contract requiring insurance applies.'" Traveler's Mot. 17-18; Traveler's Opp'n RS&H Mot. 18-19. The Traveler's Blanket AI Endorsement is therefore distinguishable from the ATOFINA decision. The Court is nevertheless persuaded that RS&H is an additional insured under the Blanket AI Endorsement.

Even though RS&H is an additional insured, there are two similar professional services exclusions. Determination of the duty to defend under Texas law is similar to Florida law under the eight-corners rule. Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195, 199 (Tex. 2022) ("[the Texas Supreme Court] adopted the eight-corners rule more than fifty years ago.") (citing Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 24 (Tex. 1965); see Crum & Forster Specialty Ins. Co. v. Smallwood, No. 4:23-CV-01079-P, 2025 WL 1637322, at *2 (N.D. Tex. June 9, 2025). The eight corners test under Texas law is as follows:

> Under the eight-corners rule, the insurer's duty to defend is determined by comparing the allegations in the plaintiff's petition to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise

[23]

> known or ultimately proven. GuideOne Elite Ins. Co.
> v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308
> (Tex. 2006). The rule's name derives from the fact
> that only two documents are ordinarily relevant to the
> determination of the duty to defend: the policy and
> the plaintiff's pleading. Id. Extrinsic evidence or
> facts outside the pleadings are generally not
> considered. Id.

Monroe Guar. Ins. Co., 640 S.W.3d 195, 199 (Tex. 2022).

Although similar to Florida law, "[w]hile the eight-corners rule

is a settled feature of Texas law, . . . it is not absolute."

Id. As a recognized exception, "courts may consider extrinsic

evidence that the insured and a third party suing the insured

colluded to make false representations of fact to secure a

defense and create coverage where it would not otherwise exist."

Id. That exception is not apparent here.

The Texas Supreme Court recognizes that the eight corners

test is met if "the pleading contain[s] the facts necessary to

resolve the question of whether the claim is covered." Id. at

202. Accordingly,

> if the underlying petition states a claim that could
> trigger the duty to defend, **and** the application of the
> eight-corners rule, due to a gap in the plaintiff's
> pleading, is not determinative of whether coverage exists,
> Texas law permits consideration of extrinsic evidence
> provided the evidence (1) goes solely to an issue of
> coverage and does not overlap with the merits of liability,
> (2) does not contradict facts alleged in the pleading, and
> (3) conclusively establishes the coverage fact to be
> proved.

Id. A high burden. In sum, "the duty to defend is constrained

by the eight-corners rule, [and] 'an insurer's duty to defend

[24]

can be determined at the moment the petition is filed.'" TIG Ins. Co. v. Woodsboro Farmers Coop., 117 F.4th 715, 722 (5th Cir. 2024) (quoting Colony Ins. Co. v. Peachtree Constr., Ltd., 647 F.3d 248, 253 (5th Cir. 2011)).

"The construction of an unambiguous contract is a question of law." Lufkin Mall Realty Holding LLC v. Lufkin Inv. Partners LLC, No. 12-24-00326-CV, 2025 WL 2346893, at *3 (Tex. App. Aug. 13, 2025) (citing Tawes v. Barnes, 340 S.W.3d 419, 425 (Tex. 2011)). The Fifth Circuit recently set forth rules of contract interpretation under Texas law:

> "The primary goal of contract construction is to effectuate the parties' intent as expressed in the contract." Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp., 640 S.W.3d 195, 198–99 (Tex. 2022). While text is critical, "our quest is to determine, objectively, what an ordinary person using those words under the circumstances in which they are used would understand them to mean." URI, Inc. v. Kleberg Cnty., 543 S.W.3d 755, 764 (Tex. 2018). "Accordingly, we must consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd., 574 S.W.3d 882, 889 (Tex. 2019) (quotation marks and citation omitted). And "the evident intent of the parties" is not only "derived from the words used" and their context, but also from "the subject-matter to which they relate, and the matters naturally or usually incident thereto." State Farm Mut. Auto. Ins. Co. v. Pan Am. Ins. Co., 437 S.W.2d 542, 544 (Tex. 1969) (quoting Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S.W. 1060, 1061 (1896)). Finally, in the insurance context, the Supreme Court of Texas urges maintaining uniformity with other jurisdictions in interpreting "identical" or "very similar" policy provisions. Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 496–97 (Tex. 2008) (quoting Trinity Universal Ins. Co.

[25]

v. Cowan, 945 S.W.2d 819, 824 (Tex. 1997)) (first quote); RSUI Indem. Co. v. The Lynd Co., 466 S.W.3d 113, 118 (Tex. 2015) (second quote).

United States Fire Ins. Co. v. Unified Life Ins. Co., 147 F.4th 583, 590-91 (5th Cir. 2025).

The analysis for the construction of an **exclusion** in an insurance contract under Texas law is deferential to the insured: the Court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is **not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent**." Utica Nat'l. Ins. Co. of Texas v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004) (citing Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991) (emphasis added)).

The Court therefore turns to each of the exclusions here. Travelers argues the more broad professional services exclusion. See Exclusion – Architectural, Engineering, or Surveying Professional Services. ECF No. 6-2 at 51. That provision excludes in pertinent part:

> "Bodily injury" or "property damage" arising out of the rendering of or failure to render any **"professional services"** by or on behalf of any insured, **but only with respect to any of the following operations:**
>
> a.    **Providing**, or hiring independent professionals to provide, architectural, **engineering** or surveying

[26]

**services** to others in any insured's capacity as an architect, engineer or surveyor; or

b.    **Providing**, or hiring independent professionals to provide, architectural, **engineering** or surveying **services in connection with construction work any insured performs.**

Travelers Professional Services Exclusion ¶ 1.    The term "professional services" is a non-exclusive list, defined as follows:

"Professional services":

a. **Includes**:

(1) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or preparing, approving, or failing to prepare or approve, drawings and specifications; and

(2) **Supervisory or inspection activities performed as part of any related** architectural, or **engineering** or surveying **activities.**

Travelers Professional Services Exclusion ¶ 3.    There is no case law that interprets this precise exclusion, and the parties cite to none.

RS&H argues that the exclusion only applies narrowly to design-related services.    RS&H Mot. 15; RS&H Opp'n 8-9. Travelers cites to cases such as Project Surveillance, Inc. v. Travelers Indem. Co., No. 4:19-CV-03324, 2020 WL 292247, at *2 (S.D. Tex. Jan. 21, 2020), but that case relied upon the Professional Services exclusion similar to the Charter Oak

[27]

exclusion.   Similarly, Travelers' reliance on <u>Nicklos Drilling</u> <u>Co.</u> v. <u>Ace Am. Ins. Co.</u>, No. CIV.A. V-14-021, 2014 WL 6606575, at *3 (S.D. Tex. Nov. 5, 2014), is misplaced where the underlying plaintiff "did not sue [the insured] in the Underlying Lawsuit based on any conduct other than [its] failure to utilize its allegedly specialized knowledge."   <u>Id.</u>   That case relied upon a definition of professional services under Texas law.  <u>See</u> <u>id.</u>

Travelers points to extrinsic evidence, such as the contract between RS&H and Sterling, but this Court need only look to the SAP and its exhibit, here the Certificate of Merit. <u>See</u> <u>Shanze Enters., Inc.</u> v. <u>Am. Cas. Co. of Reading, PA</u>, 150 F. Supp. 3d 771, 778 (N.D. Tex. 2015) ("Shanze has also failed to cite any case, and the court located none, that recognizes an exception where extrinsic evidence is referenced in the underlying complaint . . . . Accordingly, except for considering the exhibits to Baja's Complaint in the Underlying Suit, the court otherwise declines to consider [extrinsic evidence]." (footnote omitted))

The existence of a Certificate of Merit determines the issue here.[6]  Its presence means that the plaintiffs in the

---

[6] The Certificate of Merit has been considered as part of the operative complaint under the eight corners rule under Texas law.  <u>See</u> <u>AIX Specialty Ins. Co.</u> v. <u>Preferred Pools of Houston, Inc.</u>, 747 F. Supp. 3d 1044, 1050 (S.D. Tex. 2024).

[28]

underlying suit are suing based upon allegations of negligence with respect to professional services. See Tex. Civ. Prac. & Rem. Code Ann. § 150.002 (requiring a certificate of merit "in any action . . . for damages arising out of the **provision of professional services** by a licensed or registered professional," which "shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional **in providing the professional service**.") (emphasis added); see Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp., 520 S.W.3d 887, 896 (Tex. 2017).

The Certificate of Merit is attached to the complaint, and referred to therein, based upon the core allegations of the Underlying Complaint. As matter of law, the Certificate of Merit pleads professional negligence in the performance of professional services as to RS&H. SAC ¶ 5.1 ("Pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (2010) against DEFENDANT RS&H, attached to Plaintiff's Second Amended Petition is the Certificate of Merit of a licensed registered P.E. for the State of Texas, attached as Exhibit 'A'"). Here, the SAP and Certificate of Merit sounds in professional negligence for professional services. See Certificate of Merit ¶¶ 4, 5. The inspection duties by inference must therefore relate to those services. Accordingly, RS&H's interpretation is unreasonable,

[29]

the exclusion applies, and Travelers has no duty to defend RS&H for what is a claim against RS&H for a professional liability claim.

Similarly, there is a professional services exclusion contained in the Blanket AI Endorsement.  That exclusion provides in pertinent part:

> 2. The insurance provided to the additional insured by this endorsement is limited as follows:
> . . . .
> b. The **insurance provided to the additional insured does not apply to "bodily injury", "property damage" or "personal injury" arising out of the rendering of, or failure to render, any professional** architectural, **engineering** or surveying services, including:
>
>> (1) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or the preparing, approving, or failing to prepare or approve, drawings and specifications; and
>>
>> (2) **Supervisory, inspection,** architectural or engineering activities.

Blanket AI endorsement § 2(B) (emphasis added).  RS&H does not address this limitation in response to the motion, but rather in its Reply to Travelers' Opposition to RS&H's Motion for Summary Judgment.  See RS&H Reply Travelers at 5.  RS&H argues that the limitation pertains only to "professional supervisory inspection services" and that because the SAP disclaims specialized knowledge and skill of a registered engineer, the exclusion does not apply, or at least the language is ambiguous.  Id.

[30]

Presuming that RS&H is an additional insured for its own actions and omissions, the exclusion applies here as well because, again, the Certificate of Merit by its presence operates under Texas law to allege a professional negligence claim for professional services of RS&H.

## V. CONCLUSION

For the aforementioned reasons, on a case stated, the Court finds and rules that neither Charter Oak, nor Travelers owes a duty to defend.  Separate judgment expressly does **not** enter pursuant to Fed. R. Civ. P. 54(b).  As this matter is bifurcated, the Court does not reach the issue or arguments as to whether either defendant has a duty to indemnify RS&H. Inasmuch as the issue of duty to defend was undertaken on a case stated basis, and an order now enters, the pending motions for summary judgment as to the duty to defend, Nos. 28, 29, and 30, are each DENIED as MOOT.

SO ORDERED.

William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[7]

---

[7] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.

[31]